**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**



DESMOND NDAMBI,
   7717 Riverdale Rd.
   New Carrollton, MD 20784
   Prince George's County,

MBAH EMMANUEL ABI,
   1431 Troon Ave.
   Brunswick, OH 44212,

and

NKEMTOH MOSES AWOMBANG,
   3505 W. 105 St. Apt. 303
   Cleveland, OH 44111,

Individually and on behalf of all others
similarly situated,
       Plaintiffs,

v.

CORECIVIC, INC.,
   2405 York Road, Suite 201
   Lutherville Timonium, MD 21093-2264
   Baltimore County,
       Defendant.

Civil Action No. RDB 18 CV 3521

## CLASS ACTION COMPLAINT

1.    Plaintiffs Desmond Ndambi, Mbah Emmanuel Abi, and Nkemtoh Moses Awombang (collectively, "**Plaintiffs**") individually and on behalf of all others similarly situated, by and through their undersigned attorneys, bring this action against Defendant CoreCivic, Inc. ("**Defendant**" or "**CoreCivic**") for failing to pay immigrants confined in civil detention at the Cibola County Correctional Center ("**Cibola**") their legally mandated wages as required by the Fair Labor Standards Act ("**FLSA**") and the New Mexico Minimum Wage Act ("**NMMWA**").

1

Plaintiffs also bring this action, individually and on behalf of all others similarly situated, against CoreCivic for unjust enrichment under New Mexico common law because it failed to pay Plaintiffs a fair and adequate wage, yet it received the value of their labor and retained the difference between the inadequate pay and the prevailing wage in Cibola County.

2.      CoreCivic is among the oldest and largest for-profit corrections corporations in the United States. In 2017, CoreCivic reported $1.84 billion in revenue, with 48% from contracts with federal government agencies. CoreCivic owns and operates Cibola, a prison complex that has faced several recent scandals for mistreatment and inadequate care of prisoners and civilly detained immigrants. CoreCivic profits from its operation of Cibola by relying heavily on a captive workforce of civilly detained immigrants, including Plaintiffs, to perform labor necessary to keep Cibola operational and provide the services it is obligated to provide under the terms of its contract with Cibola County, New Mexico. The work includes tasks such as preparing and serving meals, cleaning the facilities, performing other janitorial tasks, performing laundry services, and operating the library and the barber shop. CoreCivic sometimes hires non-detainees who live in the surrounding community to perform the same work. If Plaintiffs did not perform this work, CoreCivic would have to hire more people from the surrounding community to keep Cibola operational and pay those additional workers the legally mandated wages, which would be substantially higher than the wages actually paid to Plaintiffs.

3.      Despite the importance and necessity of Plaintiffs' work to CoreCivic's business, CoreCivic has always paid them less than the legally required wage for their work, and sometimes as little as one dollar per day. CoreCivic has contracted with Cibola County to operate a detention facility that holds civilly detained immigrants and to pay workers the

prevailing wage in the community to operate the facility. By suffering or permitting Plaintiffs to perform work at its facility and for its benefit while paying Plaintiffs well below the minimum wage and the prevailing wage in Cibola County, CoreCivic violates its service contract with the County and suppresses wages in the local labor market. CoreCivic's labor practices at Cibola render the company liable under the Fair Labor Standards Act, the New Mexico Minimum Wage Act, and the common law doctrine of unjust enrichment.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*.

5.     Independently, the Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from Defendant CoreCivic, there are more than 100 class members, and the aggregate amount in controversy exceeds $5,000,000.

6.     Additionally, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' pendent state law claims under the New Mexico Minimum Wage Act and unjust enrichment under New Mexico common law.

7.     This Court has personal jurisdiction over Defendant pursuant to Md. Code Ann. § 6-102 because Defendant is organized under the laws of Maryland.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and Md. Code Ann. § 6-102 because Defendant is organized under the laws of Maryland and therefore resides in this District.

3

## PARTIES

### Plaintiffs

9.      Plaintiff Desmond Ndambi is an adult resident of New Carrollton, Maryland.  Mr. Ndambi has filed a consent to join this action.  *See* Exh. 1.

10.     Mr. Ndambi was an employee of CoreCivic, as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1) and (g), and the NMMWA, NM Stat. Ann. § 50-4-21.  Mr. Ndambi worked for CoreCivic while detained at Cibola from approximately June to October 2017.

11.     Plaintiff Mbah Emmanuel Abi is an adult resident of Brunswick, Ohio.  Mr. Abi has filed a consent to join this action.  *See* Exh. 2.

12.     Mr. Abi was an employee of CoreCivic, as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1) and (g), and the NMMWA, NM Stat. Ann. § 50-4-21.  Mr. Abi worked for CoreCivic while detained at Cibola from approximately June to November 2017.

13.     Plaintiff Nkemtoh Moses Awombang is an adult resident of Cleveland, Ohio.  Mr. Awombang has filed a consent to join this action.  *See* Exh. 3.

14.     Mr. Awombang was an employee of CoreCivic, as that term is defined by the FLSA, 29 U.S.C. § 203(e)(1) and (g), and the NMMWA, NM Stat. Ann. § 50-4-21.  Mr. Awombang worked for CoreCivic while detained at Cibola from approximately June to December 2017.

### Defendant

15.     Defendant CoreCivic, Inc., ("CoreCivic" or "Defendant") formerly Corrections Corporation of America,[1] is a real estate investment trust.  CoreCivic is organized under the laws

---

[1] In late 2016, the company announced it was changing its name to CoreCivic from Corrections Corporation of America.  It did not otherwise change its legal identity.  As a result, this complaint uses the names CoreCivic and Corrections Corporation of America interchangeably.

4

of Maryland with its principal place of business at 10 Burton Hills Boulevard, Nashville,

Tennessee 37215. CoreCivic has a registered agent, The Corporation Trust, Inc., located at 2405

York Road, Suite 201 Lutherville Timonium, Maryland 21093.

16.     At all relevant times, CoreCivic owned and operated the Cibola County

Correctional Center ("Cibola") located at 2000 Cibola Loop, Milan, NM 87021, pursuant to the

purported authority of a private service contract with Cibola County, New Mexico.

17.     At all relevant times, Cibola County, New Mexico maintained an

Intergovernmental Service Agreement ("IGSA") with U.S. Immigration and Customs

Enforcement ("ICE") to detain immigrants on behalf of ICE.

### FACTUAL ALLEGATIONS RELATED TO ALL CLAIMS

18.     CoreCivic is the second-largest private prison and detention corporation in the

United States, with a market capitalization of nearly \$3 billion. It recently estimated that it owns

58% of all prison beds and manages 41% of all private prison beds in the United States.

CoreCivic's contracts with ICE to civilly detain immigrants with pending removal proceedings

currently account for at least 30% of its annual revenues.

19.     CoreCivic owns and operates Cibola, which is a civil immigration detention

center and prison complex. In 2016, Cibola County entered into an IGSA with ICE to maintain

custody of civilly detained immigrants. Cibola County, in turn, entered into a service contract

with CoreCivic in which CoreCivic agreed to serve as Cibola's independent contractor for the

care and safety of civilly detained immigrants and to operate Cibola in compliance with the

terms of the IGSA between ICE and Cibola County.

20.     As an independent contractor and service provider to Cibola County, CoreCivic

drafted and supplied Cibola's staffing plan in response to a Performance Work Statement issued

5

by ICE. CoreCivic determined the number, tasks, and pay rate of detained immigrants who
would perform work.

21.     Civilly detained immigrants are individuals held in civil detention while their
immigration cases are processed. Such individuals are "administrative detainees," as they have
not been charged with any criminal violation. The purpose of their detention is to ensure their
presence during the administrative process and, if necessary, to ensure their availability for
removal from the United States. While some civilly detained immigrants are removed from the
United States after their detention, many such individuals are released from detention with
permission to reside and work in the United States legally. Civil immigration detention is not
punitive or corrective, it does not reflect a determination that detained immigrants have violated
any laws of the United States, and it does not determine the outcome of their immigration cases.
By law, civil detainees are the sole owners of the labor they provide.

22.     Plaintiffs and those similarly situated are civilly detained immigrants previously
or currently detained at Cibola.

23.     Under the IGSA, Cibola County agreed to provide or procure services necessary
to civilly detain immigrants. The ISGA incorporates into its terms the Service Contract Act, 41
U.S.C. § 351 *et seq.*, thereby requiring, *inter alia*, that any employees providing services under
the contract must be paid the prevailing wages and benefits in the locality where they are
providing such services. The IGSA requires Cibola County to provide or procure all services at
Cibola in compliance with "all applicable federal, state, and local laws and standards." If a
conflict exists between any of these laws, regulations, or standards, the IGSA provides that "the
most stringent standard shall apply."

6

24.    CoreCivic contracted with Cibola County to provide services necessary to civilly detain immigrants in compliance with the terms of the IGSA, and to hire and pay workers the prevailing wage in the community and in compliance with the state and federal minimum wage requirements. In contrast to its contract, CoreCivic has failed to provide the civilly detained immigrants with basic necessities. CoreCivic does not have the discretion to employ civilly detained immigrants to perform services necessary to operate Cibola and to pay them an amount less than the legally required wage for their work, which is sometimes as little as one dollar per day.

25.    Cibola has the capacity to hold up to 1,116 civilly detained immigrants per day. The number of such immigrants in custody at Cibola at any given time from January 2017 to the present exceeded 100 persons and, at times, has exceeded 800 persons.

26.    CoreCivic operates and maintains a work program at Cibola, pursuant to which it has suffered or permitted Plaintiffs and those similarly situated to perform work that benefits CoreCivic. Such work provides services necessary to keep Cibola operational, including preparing and serving meals, cleaning the facilities and performing other janitorial tasks, performing laundry services, and operating the library and the barber shop. These services benefit CoreCivic because they are integral to Cibola's operation and the company's profitable performance of its service contract with Cibola County. They are, therefore, essential to CoreCivic's fulfilment of its obligations under its contract with Cibola County.

27.    Plaintiffs and those similarly situated were CoreCivic employees under the FLSA and the NMMWA. CoreCivic supplied daily supervision over civilly detained immigrants who participated in the work program, including, but not limited to, creating and continuously

7

revising a facility staffing plan that accounts for the positions, hours, and pay of all detained immigrants who participate.

28.     CoreCivic paid the Plaintiffs and those similarly situated at a rate of pay that was less than the legally required wage and sometimes as little as one dollar per day. On some occasions, Plaintiffs and those similarly situated were not paid at all for their work. In all cases, Plaintiffs and those similarly situated were paid less than the minimum wage required by the FLSA and NMMWA and less than the prevailing wage for Cibola County.

29.     In violation of the provisions of the IGSA, CoreCivic has failed to follow federal and state laws when compensating civilly detained immigrants for work they perform.

30.     CoreCivic has failed to provide Plaintiffs and those similarly situated with adequate facilities and basic necessities, despite its use of their labor to maintain and operate Cibola. For example, CoreCivic often served insufficient amounts of food, at unsafe temperatures, and/or without hygienic food-handling safeguards. CoreCivic also failed to provide adequate access to telephones and legal materials.

31.     Plaintiffs and those similarly situated used their wages to purchase items, such as phone calls, food, and toiletries, that met their basic needs. CoreCivic deducted the expense of such items from the accounts of Plaintiffs and those similarly situated.

32.     CoreCivic failed to operate Cibola in compliance with the relevant contractual requirements. For instance, a January 2018 inspection by ICE's Office of Detention Oversight found the facility to be deficient in no fewer than 31 contractually imposed standards.

**Plaintiff Desmond Ndambi**

33.     Mr. Ndambi was detained at Cibola from approximately June 22, 2017, to approximately October 1, 2017. He remained in civil immigration detention at Cibola while his immigration case was processed.

34.     Shortly after arriving at Cibola, Mr. Ndambi began working as a janitor at the facility. He worked in this capacity for approximately one to three hours per day, seven days per week. CoreCivic knew that Mr. Ndambi was performing this work and permitted him to do so. Guards, who were CoreCivic employees, supervised his work, and CoreCivic provided the cleaning supplies and tools necessary for Mr. Ndambi to perform the work. CoreCivic benefitted from Mr. Ndambi's cleaning work because it was necessary to maintain the facility at a profit. CoreCivic paid Mr. Ndambi only one dollar per day for his cleaning work.

35.     Around late July 2017, Mr. Ndambi was selected to work in Cibola's library.

36.     For the last approximately two months of his detention, Mr. Ndambi worked in the library approximately eight hours per day, five days per week. CoreCivic controlled Mr. Ndambi's work hours through its staffing plan.

37.     CoreCivic knew of Mr. Ndambi's library work and permitted it. A CoreCivic employee told him when to work and escorted him to and from his shift at the library. Another employee who lived in the community and was not confined in Cibola supervised Mr. Ndambi's work, assigned him tasks, and worked alongside him. Guards, who were CoreCivic employees, also supervised Mr. Ndambi's work. CoreCivic provided the library facility and tools necessary for Mr. Ndambi to perform the work.

38.     CoreCivic usually paid Mr. Ndambi one dollar per day for his work in the library, without regard to the number of hours worked. Thus, for the approximately 40 hours per week

9

he worked in the library, CoreCivic paid Mr. Ndambi $0.125 per hour.  On several occasions, however, CoreCivic failed to pay him at all for his work.

39.     Mr. Ndambi's janitorial and library work benefitted CoreCivic by allowing it to conform to its service contract at the Cibola facility.  Because it employed Mr. Ndambi, CoreCivic did not need to employ someone else (who would have been paid at rates compliant with the FLSA, the NMMWA, and the Service Contract Act) to perform the tasks that Mr. Ndambi performed.

40.     Mr. Ndambi used his wages to purchase basic necessities while in detention. CoreCivic deducted the cost of such necessities from Mr. Ndambi's account.  When he was released, CoreCivic paid Mr. Ndambi the funds remaining in his account.

**Plaintiff Mbah Emmanuel Abi**

41.     Mr. Abi was detained at Cibola beginning approximately June 24, 2017, to approximately November 22, 2017.  He remained in civil immigration detention at Cibola while his immigration case was processed.

42.     Mr. Abi began working as a janitor at Cibola beginning in July 2017.  He performed tasks such as cleaning the floors and toilets at the facility.  Mr. Abi worked in the position approximately two hours per day, seven days per week.  CoreCivic knew of Mr. Abi's work as a janitor and permitted it.  He filled out a time sheet provided by CoreCivic that indicated how many hours he worked.  Guards, who were CoreCivic employees, supervised his work, and CoreCivic provided the cleaning supplies and tools necessary for Mr. Abi to perform his work.  Mr. Abi performed work that benefitted CoreCivic because it was necessary to maintain the facility at a profit.  CoreCivic paid Mr. Abi one dollar per day for his janitorial work.

10

43.     In August 2017, Mr. Abi filled out an application to begin working in the kitchen at Cibola. CoreCivic hired him and, through its staffing plan, assigned him to work at least six hours per day, at least five days per week. Mr. Abi signed a time sheet indicating how many hours he worked.

44.     Mr. Abi prepared and served meals to civilly detained immigrants like himself and CoreCivic employees.

45.     CoreCivic knew of Mr. Abi's work in the kitchen and permitted it. Guards, who were CoreCivic employees, supervised Mr. Abi's work. Further, CoreCivic provided the tools and facilities necessary for Mr. Abi to perform his work.

46.     Mr. Abi's work benefitted CoreCivic because it was necessary to keep the facility operational and profitable, as CoreCivic did not employ or subcontract enough people who were not detained to run the kitchen without them. Because it employed Mr. Abi, CoreCivic did not need to employ someone else (who would have been paid at rates compliant with the FLSA, the NMMWA, and the Service Contract Act) to perform the tasks that Mr. Abi performed.

47.     CoreCivic paid Mr. Abi $15 per week for working in the kitchen, without regard to the number of hours worked. Because he worked at least six hours per day, at least five days per week, CoreCivic paid Mr. Abi $0.50 or less per hour.

48.     Mr. Abi used his wages to purchase basic necessities while in detention. CoreCivic deducted the cost of such necessities from Mr. Abi's account. When he was released, CoreCivic paid Mr. Abi funds remaining in his account.

**Plaintiff Nkemtoh Moses Awombang**

49.     Mr. Awombang was detained at Cibola beginning approximately June 20, 2017,

until approximately December 20, 2017. He remained in civil immigration detention at Cibola

while his immigration case was processed.

50.     Shortly after arriving at Cibola, Mr. Awombang began working as a janitor at the

facility. In this position, Mr. Awombang worked approximately seven days per week, several

hours per day. CoreCivic knew that Mr. Awombang was performing this work and permitted

him to do so. Guards, who were CoreCivic employees, supervised his work, and CoreCivic

provided the cleaning supplies and tools necessary to perform the work. CoreCivic benefitted

from Mr. Awombang's cleaning work because it was necessary to maintain the facility at a

profit. CoreCivic paid Mr. Awombang only one dollar per day for his cleaning work.

51.     After approximately two months, Mr. Awombang began working in the kitchen,

where he worked approximately five and a half to six hours per day, five days per week.

CoreCivic controlled Mr. Awombang's work hours through its staffing plan. Mr. Awombang

worked alongside people who were not detained. He worked in this position for approximately

four months.

52.     CoreCivic knew that Mr. Awombang worked in the kitchen and permitted him to

do so. Guards, who were CoreCivic employees, supervised Mr. Awombang's work. Further,

CoreCivic provided the facilities and tools necessary for Mr. Awombang to perform his work.

CoreCivic benefitted from Mr. Awombang's kitchen work because it was necessary to keep the

facility operational at a profit, as CoreCivic did not employ or subcontract enough people who

were not detained to run the kitchen without them. Because it employed Mr. Awombang,

CoreCivic did not need to employ someone else (who would have been paid at rates compliant

with the FLSA, the NMMWA, and the Service Contract Act) to perform the tasks that Mr. Awombang performed.

53.     CoreCivic paid Mr. Awombang $15 per week without regard to the number of hours he worked.

54.     Mr. Awombang used his wages to purchase basic necessities while in detention. CoreCivic deducted the cost of such necessities from Mr. Awombang's account.  When he was released, CoreCivic paid Mr. Awombang funds remaining in his account.

## FLSA COLLECTIVE ACTION ALLEGATIONS

55.     CoreCivic failed to pay the Plaintiffs and all others similarly situated the minimum wages required by the FLSA, 29 U.S.C. §§ 201, *et seq*.

56.     CoreCivic failed to pay the Plaintiffs and all others similarly situated for all hours worked and failed to pay an effective hourly rate at or above the federal minimum wage rate of $7.25 per hour through its practices of paying a flat rate that was less than the legally required wage for their work, and sometimes as little as one dollar per day.

57.     This action can, and should, be maintained as a collective action pursuant to 29 U.S.C. § 216(b) for all claims to unpaid or underpaid wages and liquidated damages that can be redressed under the FLSA.

58.     Plaintiffs seek certification of these claims as a collective action on behalf of all civilly detained immigrants who performed work for CoreCivic at Cibola through its work program at any time during the period beginning two years prior to the date on which this action is filed and continuing to the date on which notice is issued of the opportunity to join this action.

59.     Plaintiffs reserve the right to revise the definition of the class based upon information learned after the filing of this action.

60.     Upon information and belief, there are hundreds of similarly situated current and former civilly detained immigrants at Cibola who have been subjected to the same unlawful conduct that the Plaintiffs challenge herein.

61.     Members of the proposed collective action are similarly situated.  CoreCivic civilly detained such members in the same facility, Cibola.  CoreCivic permitted such members to work, and such members did work, for the benefit of CoreCivic but were compensated at rates below the FLSA-mandated minimum wage.

62.     Members of the proposed collective action have been subjected to the same or substantially the same pay policies and practices.

63.     Members of the proposed collective action have been subjected to the same or substantially the same policy or practice that required or permitted them to perform work for CoreCivic's benefit, but compensated them at rates below the FLSA-mandated minimum wage.

64.     The identities of the members of the proposed collective action are known to CoreCivic and can be located through CoreCivic's records.

65.     Members of the proposed collective action would benefit from the issuance of Court-supervised Notice and the opportunity to join this lawsuit.

66.     A collective action will provide the most efficient mechanism for adjudicating the claims of Plaintiffs and members of the proposed collective action.

67.     Therefore, Plaintiffs request that they be permitted to serve as representatives of those who consent to participate in this action and that the action be granted collective action status pursuant to 29 U.S.C. § 216(b).

## RULE 23 NEW MEXICO MINIMUM WAGE ACT CLASS ACTION ALLEGATIONS

68.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring class-action claims for unpaid or underpaid wages under the NMMWA, NM Stat. Ann. §§ 50-4-21, *et seq*.

69.     Plaintiffs bring these class-action claims on behalf of themselves and all other civilly detained immigrants who performed work for CoreCivic at Cibola in its work program at any time from two years prior to the filing of this action through the date on which notice is issued affording the right to opt out of any class certified pursuant to Rule 23(b)(3) ("New Mexico Minimum Wage Act Class").

70.     Plaintiffs reserve the right to revise the definition of the class based upon information learned after the filing of this action.

71.     Plaintiffs bring these claims on behalf of themselves and members of the New Mexico Minimum Wage Act Class under Federal Rules of Civil Procedure 23(a), (b)(2) for their requests for declaratory and injunctive relief only, and (b)(3) for their requests for damages. The proposed New Mexico Minimum Wage Act Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those rules.

72.     **Numerosity:** The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The exact number of class members is unknown to Plaintiffs at this time, because it is within CoreCivic's control. However, upon information and belief, the class comprises hundreds of members. Membership in the class is ascertainable from CoreCivic's detention and employment records.

73.     **Commonality:** Plaintiffs and all members of the New Mexico Minimum Wage Act Class have been compensated using the unlawful practices alleged herein and, therefore, one

or more questions of law or fact are common to the New Mexico Minimum Wage Act Class.

These common questions include, but are not limited to, the following:

  a.  Whether CoreCivic is an employer of Plaintiffs and members of the New Mexico Minimum Wage Act Class within the meaning of the NMMWA;

  b.  Whether Plaintiffs and members of the New Mexico Minimum Wage Act Class are employees within the meaning of the NMMWA;

  c.  Whether CoreCivic engaged, suffered, or permitted Plaintiffs and members of the New Mexico Minimum Wage Act Class to work on its behalf;

  d.  Whether the minimum wage in the NMMWA applies to Plaintiffs and members of the New Mexico Minimum Wage Act Class;

  e.  Whether CoreCivic failed or refused to pay Plaintiffs and members of the New Mexico Minimum Wage Act Class the minimum wage required by the NMMWA;

74.  **Typicality**: Plaintiffs and members of the New Mexico Minimum Wage Act Class were subjected to the same unlawful policies, practices, and procedures and sustained similar losses, injuries, and damages. All class members were subjected to the same compensation practices by CoreCivic, as alleged herein, that required or permitted them to perform work for CoreCivic's benefit, but compensated them at rates below the NMMWA-mandated minimum wage. Plaintiffs' claims are therefore typical of the claims that could be brought by any member of the New Mexico Minimum Wage Act Class, and the relief sought is typical of the relief that could be sought by each member of the New Mexico Minimum Wage Act Class in separate actions.

75.  **Adequacy of Representation**: Plaintiffs are able to fairly and adequately protect the interests of all members of the Class, as they are challenging the same practices as the class

16

as a whole, and there are no known conflicts of interest between Plaintiffs and the members of

the New Mexico Minimum Wage Act Class.  Plaintiffs have retained counsel who have

extensive experience with the prosecution of wage-and-hour claims and complex class-action

litigation.

76.     **Predominance and Superiority**: The common questions identified above

predominate over any individual issues.  A class action is superior to other available means for

the fair and efficient adjudication of this controversy.

77.     Pursuit of this action as a class would provide the most efficient mechanism for

adjudicating the claims of Plaintiffs and the members of the New Mexico Minimum Wage Act

Class.

## RULE 23 NEW MEXICO UNJUST ENRICHMENT CLASS ACTION ALLEGATIONS

78.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring class-action

claims for unjust enrichment under New Mexico common law.

79.     Plaintiffs bring these class-action claims on behalf of themselves and all other

civilly detained immigrants who performed work for CoreCivic at Cibola in its work program

four years prior to the filing of this action through the date on which notice is issued affording

the right to opt out of any class certified pursuant to Rule 23(b)(3) ("Unjust Enrichment Class").

80.     Plaintiffs performed all work during the class period in the absence of an

enforceable employment contract with CoreCivic.

81.     Plaintiffs reserve the right to revise the definition of the classes based upon

information learned after the filing of this action.

82.     Plaintiffs bring these claims on behalf of themselves and members of the Unjust

Enrichment Class under Federal Rules of Civil Procedure 23(a), (b)(2) for their requests for

17

declaratory and injunctive relief only, and (b)(3) for their requests for damages. The proposed Unjust Enrichment Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those rules.

83.     **Numerosity:** The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. The exact number of class members is unknown to Plaintiffs at this time, because it is within CoreCivic's control. However, upon information and belief, the class comprises hundreds of members. Membership in the class is ascertainable from CoreCivic's detention and employment records.

84.     **Commonality**: Plaintiffs and all members of the Unjust Enrichment Class have been compensated using the unlawful practices alleged herein and, therefore, one or more questions of law or fact are common to the Unjust Enrichment Class. These common questions include, but are not limited to, the following:

> a.  Whether CoreCivic knowingly benefitted from the labor of Plaintiffs and members of the Unjust Enrichment Class;
>
> b.  Whether CoreCivic failed to pay fair and adequate compensation to Plaintiffs and members of the Unjust Enrichment Class;
>
> c.  Whether it would be unjust for CoreCivic to retain the benefit from any failure to pay fair and adequate compensation to Plaintiffs and members of the Unjust Enrichment Class;

85.     **Typicality**: Plaintiffs and members of the Unjust Enrichment Class were subjected to the same unlawful policies, practices, and procedures and sustained similar losses, injuries, and damages. All class members were subjected to the same compensation practices by

18

CoreCivic, as alleged herein, that required or permitted them to perform work for CoreCivic's

benefit, but denied them fair and adequate compensation, including FLSA-mandated and

NMMWA-mandated minimum wages and the prevailing wage in Cibola's locality. Plaintiffs'

claims are therefore typical of the claims that could be brought by any member of the Unjust

Enrichment Class, and the relief sought is typical of the relief that could be sought by each

member of the Unjust Enrichment Class in separate actions.

86.     **Adequacy of Representation**: Plaintiffs are able to fairly and adequately protect

the interests of all members of the Unjust Enrichment Class, as they are challenging the same

practices as the class as a whole, and there are no known conflicts of interest between Plaintiffs

and the members of the Unjust Enrichment Class. Plaintiffs have retained counsel who have

extensive experience with the prosecution of wage-and-hour claims and complex class-action

litigation.

87.     **Predominance and Superiority**: The common questions identified above

predominate over any individual issues. A class action is superior to other available means for

the fair and efficient adjudication of this controversy.

88.     Pursuit of this action as a class would provide the most efficient mechanism for

adjudicating the claims of Plaintiffs and the members of the Unjust Enrichment Class.

## CAUSES OF ACTION

### COUNT I
### FAIR LABOR STANDARDS ACT OF 1938
### 29 U.S.C. §§ 201, *et seq.*

89.     Plaintiffs reallege and incorporate by reference all previous allegations of the

complaint.

CoreCivic, as alleged herein, that required or permitted them to perform work for CoreCivic's benefit, but denied them fair and adequate compensation, including FLSA-mandated and NMMWA-mandated minimum wages and the prevailing wage in Cibola's locality. Plaintiffs' claims are therefore typical of the claims that could be brought by any member of the Unjust Enrichment Class, and the relief sought is typical of the relief that could be sought by each member of the Unjust Enrichment Class in separate actions.

86.     **Adequacy of Representation**: Plaintiffs are able to fairly and adequately protect the interests of all members of the Unjust Enrichment Class, as they are challenging the same practices as the class as a whole, and there are no known conflicts of interest between Plaintiffs and the members of the Unjust Enrichment Class. Plaintiffs have retained counsel who have extensive experience with the prosecution of wage-and-hour claims and complex class-action litigation.

87.     **Predominance and Superiority**: The common questions identified above predominate over any individual issues. A class action is superior to other available means for the fair and efficient adjudication of this controversy.

88.     Pursuit of this action as a class would provide the most efficient mechanism for adjudicating the claims of Plaintiffs and the members of the Unjust Enrichment Class.

### CAUSES OF ACTION

### COUNT I
### FAIR LABOR STANDARDS ACT OF 1938
### 29 U.S.C. §§ 201, *et seq.*

89.     Plaintiffs reallege and incorporate by reference all previous allegations of the complaint.

99.     Defendant is an employer within the meaning of NM Stat. Ann. § 50-4-21.B;

100.    Defendant has employed and continues to employ Plaintiffs and the proposed

class members by engaging, suffering, and/or permitting them to work on its behalf.

101.    Plaintiffs and the proposed class members have performed and continue to

perform work necessary to keep the facility operational, including preparing and serving meals

and other tasks in the kitchen, cleaning the facilities and performing other janitorial tasks,

performing laundry services, and operating the library and the barber shop.

102.    Since January 1, 2009, the New Mexico Minimum Wage Act has required an

employer to pay an employee a minimum wage rate of seven dollars and fifty cents ($7.50) per

hour.  NM Stat. Ann. § 50-4-22.A.

103.    Defendant has paid and continues to pay Plaintiffs and the proposed class

members less than the legally required wage for their work, and sometimes as little as one dollar

per day.

104.    Defendant has violated and continues to violate NM Stat. Ann. § 50-4-22.A. by

paying Plaintiffs and the proposed class members less than $7.50 per hour.

## COUNT III
## UNJUST ENRICHMENT
### New Mexico Common Law

105.    Plaintiffs reallege and incorporate by reference all previous allegations of the

complaint.

106.    Defendant has operated and continues to operate Cibola as a for-profit business.

107.    Defendant has utilized and continues to utilize Plaintiffs' and the proposed class

members' labor to operate Cibola.  Defendant has paid and continues to pay Plaintiffs and the

proposed class members less than the prevailing wage in Cibola's locality for their work, and sometimes as little as one dollar per day.

108.    Defendant has not paid, and continues not to pay, Plaintiffs and the proposed class members adequate compensation for their work at Cibola.

109.    Defendant has knowingly benefitted, and continues knowingly to benefit, at the expense of Plaintiffs and the proposed class members, retaining the difference between the rate it has paid, and continues to pay, Plaintiffs and the proposed class members and the fair and adequate compensation that it should have paid, and should pay, Plaintiffs and the proposed class members for their work at Cibola.

110.    It is and would be unjust for defendant to retain the benefit gained from its practice of failing to pay fair and adequate compensation to Plaintiffs and the proposed class members for their work at Cibola.

## PRAYER FOR RELIEF

Wherefore, plaintiffs pray that the Court:

A.     Certify this case as a class action on behalf of the classes defined above;

B.     Find that Plaintiffs are proper representatives of the Classes;

C.     Appoint the undersigned as Class Counsel;

D.     Order Defendant to pay for all necessary notices to the Classes;

E.     Declare that plaintiffs and members of the Classes are employees within the meaning of 29 U.S.C. § 203(e) and NM Stat. Ann. § 50-4-21.C;

F.     Declare that Defendant is an employer within the meaning of 29 U.S.C. § 203(d) and NM Stat. Ann. § 50-4-21.B.;

G.      Declare that Defendant has violated 29 U.S.C. § 206 and NM Stat. Ann. § 50-4-22.A.;

H.      Order Defendant to post at Cibola and at its principal place of business a notice describing its violations of the New Mexico Minimum Wage Act pursuant to NM Stat. Ann. § 50-4-25.F.;

I.      Enjoin Defendant from paying civilly detained immigrants less than the minimum wage required by 29 U.S.C. § 206 and NM Stat. Ann. § 50-4-22.A for work performed at Cibola;

J.      Award plaintiffs and members of the Classes their unpaid or underpaid wages and an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216;

K.      Award plaintiffs and members of the Classes their unpaid or underpaid wages plus interest, and an additional amount equal to twice the unpaid or underpaid wages, pursuant to the New Mexico Minimum Wage Act, NM Stat. Ann. § 50-4-26.C;

L.      Award plaintiffs their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216 and NM Stat. Ann. § 50-4-26.E, or as otherwise authorized by law;

M.      Declare that Defendant has been unjustly enriched by failing to adequately and fairly pay plaintiffs and members of the Classes for their work at Cibola;

N.      Award plaintiffs and members of the Classes their unpaid or underpaid wages for their work at Cibola using the prevailing wage rates required by the contract between CoreCivic and Cibola County for the work they performed;

O.      Award plaintiffs and class members prejudgment interest pursuant to NM Stat. Ann. § 56-8-3(B) or to the extent otherwise authorized by law;

90.     Plaintiffs and the proposed class members are employees within the meaning of 29 U.S.C. §§ 203(e)(1) and (g);

91.     Defendant is an employer within the meaning of 29 U.S.C. § 203(d);

92.     Defendant has employed and continues to employ Plaintiffs and the proposed class members by engaging, suffering, and/or permitting them to work on its behalf.

93.     Plaintiffs and the proposed class members have performed and continue to perform work necessary to keep the facility operational, including preparing and serving meals, cleaning the facilities and performing other janitorial tasks, performing laundry services, and operating the library and the barber shop.

94.     Since July 24, 2009, the Fair Labor Standards Act has required an employer to pay an employee a minimum wage rate of seven dollars and twenty-five cents ($7.25) per hour. 29 U.S.C. § 206.

95.     Defendant has paid and continues to pay Plaintiffs and the proposed class members less than the legally required wage for their work, and sometimes as little as one dollar per day.

96.     Defendant has violated and continues to violate 29 U.S.C. § 206 by paying Plaintiffs and the proposed class members less than $7.25 per hour.

## COUNT II
## NEW MEXICO MINIMUM WAGE ACT
### NM Stat. Ann. §§ 5-4-19, *et seq.*

97.     Plaintiffs reallege and incorporate by reference all previous allegations of the complaint.

98.     Plaintiffs and the proposed class members are employees within the meaning of NM Stat. Ann. § 50-4-21.C.;

20

P.      Award plaintiffs and members of the Classes post-judgment interest to the extent

authorized by law; and

Q.      Award plaintiffs and members of the Classes such additional relief as the interests

of justice may require.

DATED this 14th day of November, 2018.


Respectfully submitted,

/s/ Joseph M. Sellers
JOSEPH M. SELLERS (No. 06284)
jsellers@cohenmilstein.com
D. MICHAEL HANCOCK*
mhancock@cohenmilstein.com
STACY N. CAMMARANO*
scammarano@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
Suite 500
Washington, DC 20005
202-408-4600

*pro hac vice application forthcoming


/s/ Robert S. Libman
ROBERT S. LIBMAN*
rlibman@lawmbg.com
NANCY MALDONADO*
nmaldonado@lawmbg.com
DEANNA PIHOS*
dpihos@lawmbg.com
BENJAMIN BLUSTEIN*
bblustein@lawmbg.com
MATTHEW J. OWENS*
mowens@lawmbg.com
MINER, BARNHILL & GALLAND, P.C.
325 North LaSalle Street, Suite 350
Chicago, IL 60654
312-751-1170

*pro hac vice application forthcoming

/s/ R. Andrew Free
R. ANDREW FREE*
Andrew@ImmigrantCivilRights.com
LAW OFFICE OF R. ANDREW FREE
P.O. Box 90568
Nashville, TN 37209
844-321-3221x1

*pro hac vice application forthcoming

**Attorneys for Plaintiffs and the Proposed Class**