**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| Desmond Ndambi, et al., individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:18-cv-03521-RDB |
| v. | ) ) | |
| CoreCivic, Inc., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant CoreCivic, Inc., moves to dismiss this action pursuant to Civil Procedure Rule 12(b). Plaintiffs and the putative class members—all former or current civil immigration detainees in the custody of U.S. Immigration and Customs Enforcement ("ICE")—bring claims under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act ("NMMWA"). They allege that they were underpaid for labor voluntarily performed while detained in a New Mexico facility and awaiting removal proceedings. Their claims, however, rely on the incorrect legal premise that they were "employees" of the detention facility's private operator, CoreCivic. As courts across the country have consistently concluded, they were not employees because the economic reality of their custodial detention belies any indicia of a traditional free-market-employment relationship. Thus, as a matter of law, neither the FLSA nor the NMMWA apply. And because they were not entitled to federal or state statutory wages, their claim for unjust enrichment fails as well. The Court should dismiss all claims with prejudice.

## I.     COMPLAINT ALLEGATIONS.[1]

Plaintiffs Desmond Ndambi, Mbah Emmanuel Abi, and Nkemtoh Moses are three former ICE detainees who were detained at the Cibola County Correctional Center ("Cibola") in Cibola County, New Mexico pending their removal proceedings.  (Doc. 1, ¶¶ 9–14 & 21.)  CoreCivic owns and operates Cibola pursuant to an Intergovernmental Service Agreement ("IGSA") between ICE and Cibola County.  (Id., ¶¶ 15–17, 21, 23 & 24.)  Under that agreement, CoreCivic is required to maintain a voluntary work program for ICE detainees.  (Id., ¶ 26.)

Ndambi alleges that he was detained at Cibola from June 22, 2017, to October 1, 2017, and worked as a janitor and in the facility's library.  (Id., ¶¶ 33-38.)  He alleges that he was paid $1 for each day that he worked.  (Id.)  Abi alleges that he was detained at Cibola from June 24, 2017, to November 22, 2017, and worked as a janitor and in the facility's kitchen.  (Id., ¶¶ 41-47.)  He alleges that he was paid $1 per day as a janitor and $15 per week as a kitchen worker.  (Id.)  Awombang alleges that he was detained at Cibola from June 20, 2017, to December 20, 2017, and also worked as a janitor and kitchen worker for the same amounts.  (Id. ¶¶ 49-53.)

In Count I, Plaintiffs bring a claim under the FLSA and allege that they were entitled to the federal minimum wage of $7.25 per hour.  (Id., ¶¶ 89–96.)  They allege that CoreCivic was an employer under 29 U.S.C. § 203(d), and that they were employees under 29 U.S.C. §§ 203(e)(1) and (g).  (Id.)  In Count II, Plaintiffs bring a claim under the NMMWA and allege that they were entitled to the state minimum wage of $7.50 per hour.  (Id., ¶¶ 99–104.)  They allege that CoreCivic was an employer under N.M. Stat. § 50-4-21.  (Id.)  Finally, in Count III,

---

[1] For purposes of this Motion, the Court must assume the allegations in the Complaint are true and construe them in the light most favorable to Plaintiffs.  *See In re Human Genome Scis. Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 757 (D. Md. 2013).

Plaintiffs bring a New Mexico unjust-enrichment claim, alleging that their labor relieved CoreCivic from having to employ others the minimum wages. (Id., ¶¶ 46, 56, 57, 105–110.) Plaintiffs seek to certify their FLSA claim as a collective action, pursuant to 29 U.S.C. § 216(b), and their NMMWA and unjust enrichment claims as class actions, pursuant to Civil Rule 23, on behalf of all civilly detained immigrants who performed work at Cibola in the two (or four) years prior to the complaint and prospectively. (Id., ¶¶ 55-88.)

## II.     THE COMPLAINT FAILS TO STATE A VIABLE CLAIM.

### A.     Standard of Review.

To survive a motion to dismiss, a plaintiff must state a plausible claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Although a court must accept as true all factual allegations, that principle "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, the Court cannot accept as true Plaintiffs' allegations that they were "employees," or that CoreCivic was their "employer," under the minimum wage laws. Those are legal conclusions that this Court must decide as a matter of law.

### B.     Plaintiffs' FLSA Claim Should Be Dismissed.

Congress enacted the FLSA "to protect the standard of living and general well-being of the American worker." *Villarreal v. Woodham*, 113 F.3d 202, 207 (11th Cir. 1997); *see also* 29 U.S.C.A. § 202(a). The FLSA "mandates that employers pay a minimum wage to *covered employees* . . . ." *Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d 518, 523 (D. Md. 2011) (citing 29 U.S.C. §§ 206(a)(1)) (emphasis added). But not everyone who meets the technical definition of an employee is covered under the FLSA. *See Benshoff v. City of Virginia Beach*, 180 F.3d

136, 140 (4th Cir. 1999) (holding that "the definitions of 'employ' and 'employer' were 'not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another,' nor should they be interpreted so as to 'sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit'") (alteration in original); *see also Francis v. Johns*, No. 5:11-CT-3005-FL, 2013 WL 1309285, at *7 (E.D. N.C. Mar. 28, 2013) (holding that "the FLSA's minimum wage provisions apply only to workers who are 'employees' within the meaning of the [FLSA]").

In determining whether a claimant is a covered employee within the meaning of the FLSA, the Supreme Court has instructed courts to look at "the 'economic reality' rather than 'technical concepts.'" *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961). That determination "does not depend on 'isolated factors but rather upon the circumstances of the whole activity.'" *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011) (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). "Courts generally look at the 'economic reality' of an individual's status in the workplace before determining liability." *Id.* "Those seeking compensation under the [FLSA] bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the [FLSA]." *Benshoff*, 180 F.3d at 140.

In a custodial-detention setting such as this, the question whether an employment relationship exists turns on the economic reality of the relationship: Can it plausibly be said that the claimant is "'employed' in the relevant sense at all?" *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992).

In the prison context, federal courts have uniformly answered that question in the negative, holding that the custodial nature of prisoner labor falls outside the type of employment relationship that Congress intended the FLSA to protect. *See Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) ("We join these other circuits and hold that a prisoner doing work in or for the prison is not an 'employee' under the FLSA and is thus not entitled to the federal minimum wage."); *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir. 2005) ("The Fair Labor Standards Act is intended for the protection of employees, and prisoners are not employees of their prison, whether it is a public or a private one. So they are not protected by the Act."); *Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999) ("Each circuit that has addressed the question has concluded that prisoners producing goods and services used by the prison should not be considered employees under the FLSA."); *Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc.*, 112 F.3d 1119, 1124 (11th Cir. 1997) ("We are persuaded by the reasoning of our sister circuits, and we join them in the conclusion that inmates who work for state prison industries are not covered by the FLSA."); *Danneskjold v. Hausrath*, 82 F.3d 37, 43–44 (2d Cir. 1996) (holding: "[N]o Court of Appeals has ever questioned the power of a correctional institution to compel inmates to perform services for the institution without paying the minimum wages. Prisoners may thus be ordered to cook, staff the library, perform janitorial services, work in the laundry, or carry our numerous other tasks that serve various institutional missions of the prison, such as recreation, care and maintenance of the facility, or rehabilitation. Such work occupies the prisoners' time that might otherwise be filled by mischief; it trains prisoners in the discipline and skills of work; and it is a method of seeing that prisoners bear a cost of their incarceration."; further holding "that prison labor that produces goods or services for institutional needs of the prison, whether voluntary or involuntary, inside or outside the institution, or in

connection with a private employer, is not an employment relationship within the meaning of the FLSA"); *Abdullah v. Myers*, 52 F.3d 324, *1 (6th Cir. 1995) (unpublished op.) ("Other circuits which have addressed this issue have concluded that prisoners are not employees entitled to the minimum wage because the prison has a rehabilitative rather than a pecuniary interest in encouraging inmates to work, because the relationship is not an employment relationship but a custodial one, and because the purposes of the Fair Labor Standards Act are not implicated in this situation, as the prisoner does not require the minimum wage to maintain his standard of living, which is provided by the state, and there is no unfair competition with employers outside the prison."); *Franks v. Oklahoma State Indus.*, 7 F.3d 971, 973 (10th Cir. 1993) ("In our view, the economic reality test was not intended to apply to work performed in the prison by a prison inmate."); *see also Henthorn v. Dep't of Navy*, 29 F.3d 682, 686 (D.C. Cir. 1994) (holding prisoner not employee of the prison); *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994) (same); *Hale v. Arizona*, 993 F.2d 1387, 1395 (9th Cir. 1993) ("[W]e are influenced by the fact that no other circuit has construed the relationship between a prison and a prisoner with a hard-time obligation who works on a program structured by the prison as an employment relationship within the FLSA.").

In *Harker v. State Use Industries*, 990 F.2d 131, 136 (4th Cir. 1993), the Fourth Circuit agreed, noting that federal courts have uniformly held that the FLSA does not cover prisoner labor "for any type of prison-operated industry or for the prison itself." It reasoned that the custodial relationship differs significantly from the traditional-free market employment relationship that Congress intended to protect:

> [Prisoners] certainly are not free to walk off the job site and look for other work. When a shift ends, inmates do not leave DOC supervision, but rather proceed to the next part of their regimented day. [The parties] do not enjoy the employer-employee

> relationship contemplated in the [FLSA], but instead have a custodial relationship to which the Act's mandates do not apply.
>
> Further, the FLSA does not cover these inmates because the statute itself states that Congress passed minimum wage standards in order to maintain a "standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). While incarcerated, inmates have no such needs because the DOC provides them with the food, shelter, and clothing that employees would have to purchase in a true employment situation. So long as the DOC provides for these needs, Harker can have no credible claim that inmates need a minimum wage to ensure their welfare and standard of living.

*Id*. at 133. These reasons preclude prisoner-labor-based claims under the FLSA regardless of whether the alleged employer was a private or government entity, or whether the work assignment was voluntary or involuntary. *Id.* at 133, 136; *accord Danneskjold*, 82 F.3d at 43 (holding that "the voluntary performance of labor that serves institutional needs of the prison is not in economic reality an employment relationship. The prisoner is still a prisoner; the labor does not undermine FLSA wage structures; the opportunity is open only to prisoners; and the prison could order the labor if it chose. Indeed, to hold otherwise would lead to a perverse incentive on the part of prison officials to order the performance of labor instead of giving some choice to inmates").

The Fourth Circuit has thus *categorically* rejected FLSA claims based on all types of prisoner labor because applying a control-type test "in situations when an inmate works inside prison walls only encourages unnecessary litigation and invites confusion in an area of the law that should be quite clear." *Harker*, 990 F.2d at 136. It stated it "will not judicially impose a new kind of employer-employee framework upon the DOC and its inmates under the guise of interpreting the FLSA's scope," because, "[f]or more than fifty years, Congress has operated on

the assumption that the FLSA does not apply to prisoner labor. If the FLSA's coverage is to extend within prison walls, Congress must say so, not the courts." *Id.*[2]

Courts have since extended this rationale to reject FLSA claims brought by pretrial detainees based on work-program labor, finding that the economic reality of pretrial detention was not materially different than that of incarcerated prisoners. *See Villarreal*, 113 F.3d at 206 (finding "inmate cases helpful because pretrial detainees are similar to convicted prisoners in that they are incarcerated and are under the supervision and control of a governmental entity, and holding: "Clearly, pretrial detainees are in a custodial relationship like convicted prisoners. Correctional facilities provide pretrial detainees with their everyday needs such as food, shelter, and clothing. Convicted prisoners are likewise provided these same basic needs. Additionally, like convicted prisoners, pretrial detainees suffer from loss of freedom of choice and privacy due to the nature of their confinement. In light of these similarities, we deem persuasive the cases addressing the applicability of the FLSA to convicted inmates.") (internal citation omitted).

---

[2] The Fourth Circuit's refusal to interpret the FLSA in a manner that would extend its protections to cover custodial contexts because Congress never contemplated it when passing the Act is consistent with the Supreme Court's refusal to literally read statutes out of context to cover conduct that Congress never intended the statutes to address. *See*, *e.g.*, *Yates v. United States*, 135 S. Ct. 1074, 1081, 1087 (2015) (rejecting "an aggressive interpretation of 'tangible object'" out of context to criminalize a defendant's destruction of fish, finding it "highly improbable that Congress would have buried a general spoliation statute covering objects of any and every kind in a provision targeting fraud in financial record-keeping"); *see also*, *e.g.*, *Bond v. United States*, 572 U.S. 844, 857 (2014) ("Part of a fair reading of statutory text is recognizing that 'Congress legislates against the backdrop' of certain unexpressed presumptions," and holding that it did not intend the Chemical Weapons Convention Implementation Act to cover the use of a toxic chemical by a jilted wife to assault her husband's paramour). Indeed, the Supreme Court's holding that "the 'economic reality' rather than 'technical concepts' is to be the test of employment," *Goldberg*, 366 U.S. at 33, echoes this instruction by the Supreme Court that context matters in determining whether a particular employment relationship is covered under the FLSA.

This is because pretrial-detention labor, like prisoner labor, bears none of the indicia of traditional free market employment, and imposing minimum wages in a custodial-detention setting is inconsistent with the FLSA's primary goal of protecting the standard of living and well-being of workers:

> Focusing on the economic reality of the situation in its entirety, we conclude that [a pretrial detainee] is not an "employee" under the FLSA. The purpose of the FLSA is to protect the standard of living and general well-being of the American worker. Because the correctional facility meets Villarreal's needs, his "standard of living" is protected. In sum, "the more indicia of traditional, free-market employment the relationship between the prisoner and his putative 'employer' bears, the more likely it is that the FLSA will govern the employment relationship." Villarreal's situation does not bear any indicia of traditional free-market employment contemplated under the FLSA. Accordingly, we hold that Villarreal and other pretrial detainees in similar circumstances are not entitled to the protection of the FLSA minimum wage requirement.

*Villareal*, 113 F.3d at 207; *accord Tourscher*, 184 F.3d at 244 ("We agree with this rationale. Tourscher's employment bears no indicia of traditional free-market employment. Therefore, we hold that the minimum wage requirements of the FLSA do not apply to Tourscher or other similarly situated pretrial detainees.").

Courts have extended this logic even further and applied this version of the economic-reality test to reject minimum-wage claims brought by *civil* detainees under the FLSA, finding that the distinction among prisoners, pretrial detainees, and civil detainees is immaterial. *See Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015) ("We cannot see what difference it makes if the incarcerated person is a prisoner, civil detainee, or pretrial detainee. In all cases, the aforementioned principles apply equally.").

For instance, in *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008), the court held that the FLSA does not apply to labor provided by a civil detainee committed to a treatment facility,

finding that they are not in the facility "for the purpose of enabling them to earn a living." The Seventh Circuit reasoned that Congress did not intend to impose a minimum wage in such circumstances, even if the work was used to "offset some of the costs" of the detention:

> The [facility] pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours.

*Id.* The First Circuit has held the same. *See Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (holding the FLSA does not apply to a civil detainee committed as a sexually dangerous person). And so has the Fourth Circuit.

In *Matherly v. Andrews*, 859 F.3d 264, 278 (4th Cir. 2017), the Fourth Circuit rejected FLSA claims based on labor performed by civil detainees for the same reasons it categorically rejected FLSA claims based on prisoner labor in *Harker*: "The *Harker* factors are applicable here and compel the conclusion that [a civil detainee] doesn't qualify as an 'employee' within the meaning of the FLSA . . . ." *See also*, *e.g.*, *Williams v. Coleman*, No. 1:11-CV-01189-GBC PC, 2012 WL 6719483, at *3 (E.D. Cal. Dec. 26, 2012), *aff'd*, 536 F. App'x 694 (9th Cir. 2013) ("The law is clear that prisoners may be required to work and that any compensation for their labor exists by grace of the state. There is no authority to justify a digression from this well-established law when the case involves a civil detainee rather than a prisoner.") (internal citations omitted); *Shaw v. Briody*, No. 2:02CV500FTM-33SPC, 2005 WL 2291711, at *3 (M.D. Fla. Sept. 20, 2005) (finding "that FLSA is inapplicable to . . . civil detainees housed at the FCCC").

The common thread that binds all these cases, which have unanimously rejected FLSA claims based on labor performed in a prison or detention facility is the custodial nature of the

relationship between the prisoners/detainees and their custodian. That custodial-detention relationship does not bear any indicia of traditional free-market employment situations to which the FLSA's provisions apply. Because the prisoner or detainee is removed from the national economy, because the work performed in the work program is merely incident to the incarceration or detention, and because the custodian provides for their welfare and basic standard of living, there is no need for a minimum wage.

Civil immigration detainees are no different. On remarkably similar facts, the Fifth Circuit has applied the same logic in the immigration-detention context. In *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 395 (5th Cir. 1990), the court held that immigration detainees who performed maintenance, cooking, laundry, and other services for $1 per day at their detention center were not covered employees under the FLSA. Just like prisoners, pretrial detainees, and other civil detainees, the court reasoned that immigration detainees were "removed from American industry," under the direct supervision and control of the detention facility, and "not within the group that Congress sought to protect in enacting the FLSA." *Id.* at 395–96.

In reaching this conclusion, the court further noted that Congress manifested its intent not to provide federal-minimum wages to such immigration detainees in the Immigration and Naturalization Act, which authorizes "payment of allowances to aliens for work performed while held in custody under the immigration laws," *id.* at 396 (citing 8 U.S.C. § 1555(d), and Congress then set that allowance at "a rate not in excess of $1 per day," *id.* (citing Department of Justice Appropriation Act, Pub. L. No. 95-86, 91 Stat. 426 (1978)). This rate was substantially less than the federal minimum wage of $2.65 *per hour* in 1978, when the appropriations bill passed. *See* https://www.dol.gov/whd/minwage/chart.htm. Having itself set an allowance for immigration-detainee labor that was far below the federal minimum wage, Congress could not have intended

the FLSA's minimum-wage protections to cover labor performed at an immigration detention center under the work program it specifically funded.

Likewise here, Plaintiffs' participation in the voluntary work program at Cibola lacks any indicia of a free-market employment relationship. Plaintiffs were not at Cibola to earn a living. Like the immigration detainees in *Alvarado*, Plaintiffs were in ICE custody and detained at Cibola pending their removal proceedings. Plaintiffs were thus completely removed from participating in the national economy.

Moreover, there was no need for Plaintiffs to earn a minimum wage at Cibola because CoreCivic provided their standard of living (food, shelter, healthcare, etc.). *See Sanders*, 544 F.3d at 814. Thus, Plaintiffs' basic standard of living and welfare were protected regardless of whether they worked. To the extent that CoreCivic allegedly offset some of those costs through the work program, that allegation does not warrant a radical departure from *Harker*, *Matherly*, and the plethora of other cases discussed above, which establish that the FLSA does not apply to such custodial relationships. *See Sanders*, 544 F.3d at 814 (holding that Congress did not intend to impose a minimum wage on civil detention, even if the work was used to "offset some of the costs" of the detention).

Simply put, the economic reality of Plaintiffs' immigration detention does not give rise to an employment relationship within the meaning of the FLSA. Thus, they were not "covered employees" within the meaning of the FLSA.

C. **Plaintiffs' NMMWA Claim Fails for the Same Reasons.**

The statutory definitions of "employ," "employer," and "employee" under both the FLSA and the NMMWA (other than exceptions inapplicable here) are substantially the same. *Compare* N.M. Stat. § 50-4-21(A), (B), and (C), *with* 29 U.S.C. § 203)(d), (e)(1), and (g); *accord Garcia v. Am. Furniture Co.*, 689 P.2d 934, 938 (N.M. Ct. App. 1984). Thus, courts interpreting whether

an employee is covered under the NMMWA look to federal decisions interpreting the FLSA's analogous provisions as persuasive authority. *Id.* "In determining whether a person is an employee under the [NMMWA], 'the ultimate issue is whether as a matter of "economic reality" the particular worker is an employee.'" *Garcia*, 689 P.2d at 938 (quoting *Weisel v. Singapore Joint Venture, Inc.,* 602 F.2d 1185, 1189 (5th Cir. 1979)).

Following the Fifth Circuit's reasoning in *Alvarado*, two courts have held that immigration detainees are not covered employees under their respective state minimum-wage statutes, finding that the legislative purpose of protecting the standard of living and welfare of workers was not served because of the custodial setting. *See Menocal v. GEO Group., Inc.*, 113 F. Supp. 3d 1125, 1129 (D. Colo. 2015) (dismissing immigration detainees' claim under analogous Colorado minimum-wage statute because the facility provided for their standard of living and well-being) (citing *Alvarado*, 902 F.2d at 396); *see also Whyte v. Suffolk Cty. Sheriff's Dep't*, 91 Mass. App. Ct. 1124, *2 (2017) (unpublished op.), *review denied*, 94 N.E.3d 395 (Mass. 2017) ("We find no reason why Whyte's status as a detainee should result in a different outcome from Federal cases. Federal cases have excluded prison labor performed within the prison, because the primary goals of the FLSA—ensuring a basic standard of living and preventing wage structures from being undermined by unfair competition in the marketplace—do not apply in that context. The rationale of the Federal cases is equally applicable to the Massachusetts wage laws at issue here.").

Likewise here, the NMMWA's purpose is to protect the standard of living and general welfare of New Mexico workers. *See* N.M. Stat. § 50-4-19. Plaintiffs were not covered employees under the NMMWA because CoreCivic provided for Plaintiffs' standard of living and welfare. Additionally, Plaintiffs were not detained at Cibola to earn a living. They were

removed from the national economy and held in custody pending the outcome of removal proceedings. Plaintiffs' state-minimum wage claim thus fails for the same reasons their federal claim fails. *See*, *e.g.*, *Padilla v. Am. Fed'n of State, Cty., and Mun. Emps.*, 11-1028 JCH/KBM, 2013 WL 12085976, at *9 (D. N.M. March 28, 2013) (finding it unnecessary to address NMMWA claim after finding that plaintiff was not a covered employee under the FLSA, noting that "both parties agree that the same legal analysis applies in both case"), *aff'd*, 551 F. App'x 941, 944 (10th Cir. 2014) ("We agree with the district court's analysis, and conclude, as a matter of law, that Padilla is not an employee for purposes of the FLSA or NMMWA.").

### D. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed.

To state a claim for unjust enrichment under New Mexico law, the allegations must establish that (1) the defendant knowingly benefitted at the plaintiff's expense (2) in a manner that allowing the defendant to retain that benefit would be unjust. *Ontiveros Insulation Co. v. Sanchez*, 3 P.3d 695, 698–99 (N.M. App. 2000) (citing Restatement of the Law of Restitution §§ 1, 40, 41 (1937)). The mere fact that the defendant retained a benefit at the plaintiff's expense is thus insufficient—the retention of that benefit must also be unjust. *See Sunwest Bank of Albuquerque v. Colucci*, 872 P.2d 346, 349, ¶ 12 (N.M. 1994) (citing Restatement (First) of Restitution § 19(c)) ("Even where a person has received a benefit from another, he is liable to pay therefor only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it. The mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor.")).

Here, Plaintiffs claim that CoreCivic was unjustly enriched is based on the same incorrect legal premise that it was unlawful to pay them less than the minimum wages under the FLSA and the NMMWA. Thus, this claim is merely derivative of the minimum-wage claims in Counts I and II, and fails because they fail. *See*, *e.g.*, *Roscoe v. Fed. Home Loan Mortg. Ass'n*, 201 F.3d

449, *7 (10th Cir. 1999) (unpublished op.) ("Roscoes' unjust enrichment claim in many ways parallels their 'unconscionability' claim, and fails for the same reasons.").

Nevertheless, the unjust enrichment claim fails because there was no inequity between the parties. Any alleged benefit that CoreCivic received by paying Plaintiffs less than the minimum wage was more than offset by the fact that CoreCivic provided all of Plaintiffs' basic living expenses, including food, utilities, supplies, housing, and medical care at no cost to them. *See*, *e.g.*, N.M. Stat. § 50-4-22 (B) ("An employer furnishing food, utilities, supplies, or housing to an employee who is engaged in agriculture may deduct the reasonable value of such furnished items from any wages due to the employee.").

Moreover, the unjust enrichment claim fails to the extent it is based on an implied-in-fact employment contract. In New Mexico, quasi-contract theories of restitution are not available for claims "grounded in the parties' contractual relationship." *See Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1117 (10th Cir. 2005) (The "hornbook rule [is] that quasi-contractual remedies ... are not to be created when an enforceable express contract regulates the relations of the parties with respect to the disputed issue."). In such circumstances, the parties are to "be bound by the terms of the written agreements to which they freely commit themselves." *Id.* at 1116 (quotation omitted).

Thus, to the extent that Plaintiffs' work-program assignments during their detention at Cibola can give rise to an implied employment contract, their compensation is determined by that agreement, and any equitable claim for more compensation is barred. *See*, *e.g.*, *Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 861, ¶ 12 (N.M. 1990) ("From all of this we conclude that, even though an action for unjust enrichment is not 'based on contract' in a strict theoretical sense, it is so closely related to an action which *is* so based that the immunity statute here,

Section 37–1–23, should be construed to extend immunity to an unjust enrichment claim as well as to a claim founded on a true, but unwritten, contract."). Nor do Plaintiffs allege that CoreCivic's payment of less than the federal or state minimum wages was the result of mistake or coercion. *Cf. Sunwest Bank of Albuquerque*, 872 P.2d at 349 ("Where a plaintiff has paid money in the mistaken belief that an enforceable contract exists, the plaintiff is entitled to recover the money paid, as restitution."). Thus, the value of any labor that CoreCivic allegedly retained through the work program, above the compensation Plaintiffs already received (including free living expenses), was an officious benefit to which Plaintiffs have no right to restitution. *See* Restatement (First) of Restitution § 112 ("[T]he principle that a person who officiously confers a benefit upon another is not entitled to restitution therefor."). As a matter of law, there is no unjust enrichment.

### III.   CONCLUSION

For these reasons, the Court should dismiss all claims.

/ / /

/ / /

/ / /

Dated:  January 11, 2019                            Respectfully submitted,

/s/ Daniel P. Struck
Daniel P. Struck *(pro hac vice)*
Rachel Love *(pro hac vice)*
Jacob B. Lee *(pro hac vice)*
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Phone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
jlee@strucklove.com

Paul J. Maloney, 02026
Matthew D. Berkowitz, 17999
K. Maxwell Bernas, 1048861
CARR MALONEY PC
2020 K Street NW, Suite 850
Washington, DC 20006
Phone: (202) 310-5500
Fax: (202) 310-5555
paul.maloney@carrmaloney.com
matthew.berkowitz@carrmaloney.com
maxwell.bernas@carrmaloney.com

Attorneys for Defendant CoreCivic, Inc.

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 11th day of January, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Joseph M. Sellers | jsellers@cohenmilstein.com |
| D. Michael Hancock | mhancock@cohenmilstein.com |
| Stacy N. Cammarano | scammarano@cohenmilstein.com |
| Robert S. Libman | rlibman@lawmbg.com |
| Nancy Maldonado | nmaldonado@lawmbg.com |
| Deanna Pihos | dpihos@lawmbg.com |
| Benjamin Blustein | bblustein@lawmbg.com |
| Matthew J. Owens | mowens@lawmbg.com |
| R. Andrew Free | andrew@immigrantcivilrights.com |
| Matthew D. Berkowitz | matthew.berkowitz@carrmaloney.com |
| K. Maxwell Bernas | maxwell.bernas@carrmaloney.com |

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

      N/A

      /s/ Daniel P. Struck

3526382.1