**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-2207

DESMOND NDAMBI; MBAH EMMANUEL ABI; NKEMTOH MOSES AWOMBANG, individually and on behalf of all others similarly situated,

　　　　Plaintiffs – Appellants,

and

IVAN CHACON CHACON; PRUDENCIO RAMIREZ; HONORE OTAYEMA RECINOS; BOKOLE UMBA DIEU,

　　　　Plaintiffs,

v.

CORECIVIC, INC.,

　　　　Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge.  (1:18-cv-03521-RDB)

Submitted:  January 29, 2021                                         Decided:  March 5, 2021

Before WILKINSON, KEENAN, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Keenan and Judge Diaz joined.

Joseph M. Sellers, Michael Hancock, Stacy N. Cammarano, COHEN MILSTEIN SELLERS & TOLL PLLC, Washington, D.C.; Robert S. Libman, MINER, BARNHILL & GALLAND, P.C., Chicago, Illinois, for Appellants. Daniel P. Struck, Nicholas D. Acedo, STRUCK LOVE BOJANOWSKI & ACEDO, PLC, Chandler, Arizona; Paul J. Maloney, Matthew D. Berkowitz, K. Maxwell Bernas, CARR MALONEY P.C., Washington, D.C., for Appellee.

WILKINSON, Circuit Judge:

Appellants are former Immigration and Customs Enforcement civil detainees who allege that they are owed wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, for work performed while detained. The district court dismissed the case on the grounds that this circuit and others have declined to extend the FLSA to custodial settings. For the reasons that follow, we think that task is best left to Congress and thus affirm.

I.

In 2017, appellants were detained for several months at the Cibola County Correctional Center (Cibola) in Milan, New Mexico, which houses detainees "while their immigration cases are processed . . . to ensure their presence during the administrative process and, if necessary, to ensure their availability for removal from the United States." J.A. 10. Cibola is operated pursuant to a series of agreements among Cibola County, New Mexico, the Department of Homeland Security, Immigration and Customs Enforcement (ICE), and appellee CoreCivic, Inc. According to its 2016 Intergovernmental Service Agreement (IGSA) with ICE, Cibola County is authorized to "detain immigrants on behalf of ICE." J.A. 9. Cibola County, in turn, entered into a service agreement with CoreCivic, authorizing the for-profit private company "to serve as Cibola's independent contractor for the care and safety of civilly detained immigrants." *Id.*

Under its service agreement with the county, CoreCivic is bound by the terms of the IGSA between Cibola County and ICE. This includes providing detainees with "safekeeping, housing, subsistence, medical and other services." J.A. 118. The contract also requires CoreCivic to operate Cibola in accordance with ICE's Performance-Based

3

National Detention Standards (PBNDS). These standards mandate that CoreCivic offer and manage a Voluntary Work Program (VWP) for detainees. The VWP aims to "reduce[]" the "negative impact of confinement . . . through decreased idleness, improved morale and fewer disciplinary incidents," while also providing detainees "opportunities to work and earn money while confined, subject to the number of work opportunities available and within the constraints of the safety, security and good order of the facility." J.A. 155. As its name suggests, the program is voluntary, although selection and continued participation depend on a detainee's classification level, attitude, and behavior. Work assignments include "preparing and serving meals, cleaning the facilities, performing other janitorial tasks, performing laundry services, and operating the library and the barber shop." J.A. 6. CoreCivic sometimes hires community members of Cibola County to perform the same or similar work. Detainees are not permitted to "work in excess of 8 hours daily, 40 hours weekly." J.A. 157.

Appellants participated in Cibola's VWP by working as janitors and in the library and kitchen. For this work, they were compensated between $1.00 a day and $15.00 a week, which is markedly below the federally- and state-mandated minimum wages for covered employees but satisfies the pay required by the VWP standards. *See* J.A. 13–17. Appellants further allege that because CoreCivic failed to provide them "with adequate facilities and basic necessities," they "used their wages to purchase items, such as phone calls, food, and toiletries, that met their basic needs." J.A. 12. In particular, a 2018 inspection by ICE's Office of Detention Oversight found three deficiencies in regards to food; these related to the temperature of food, a delivery cart that was left unsupervised,

4

and the use of gloves and hair nets by food delivery workers. J.A. 172–73. The facility took appropriate corrective actions before the inspection was completed.

After their release, appellants filed this suit in November 2018 on behalf of themselves and others similarly situated, alleging that CoreCivic violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201, *et seq.*, New Mexico Minimum Wage Act (NMMWA), N.M. Stat. Ann. §§ 50-4-19, *et seq.*, and the common law doctrine of unjust enrichment by paying civilly detained immigrant workers less than federal and state-mandated minimum wages. CoreCivic filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) in January 2019, which the district court granted in September 2019.

The district court relied upon this court's decision in *Harker v. State Use Industries*, 990 F.2d 131, 133 (4th Cir. 1993), which held that a prison inmate was not covered by FLSA for his work in the prison's graphic print shop because the custodial context differs substantially from the traditional free labor market. J.A. 179. It also found the Fifth Circuit's decision in *Alvarado Guevara v. I.N.S.*, 902 F.2d 394, 396 (5th Cir. 1990), persuasive, which held the FLSA inapplicable to work performed by alien detainees because they were "removed from American industry" while detained. *Id*. The trial court thus concluded that appellants were not "employees" as contemplated by the FLSA or NMMWA and were therefore not entitled to federal or state-mandated minimum wages. *Id*. "The economic reality of the Plaintiffs' situation," the court noted, "is almost identical to a prison inmate and does not share commonality with that of a traditional employer-

5

employee relationship." *Id.* The court then dismissed appellants' unjust enrichment claim as contingent on the success of their FLSA claim. J.A. 179–80.

We review a district court's grant of a motion to dismiss *de novo*. *Harbourt v. PPE Casino Resorts Md., LLC*, 820 F.3d 655, 658 (4th Cir. 2016). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Harbourt*, 820 F.3d at 658.

II.

Appellants argue that they are owed wages under the minimum wage provisions of the FLSA and NMMWA for work performed while they were detained for civil immigration proceedings because they were "employees" under those acts. But such a claim is clearly foreclosed by this circuit's precedent and the well-established principles governing the interpretation of the FLSA.[1]

A.

The FLSA requires an "employer" to pay an "employee" no less than the federal minimum wage. 29 U.S.C. § 206(a). As has been noted, the Act's "circular" definition of "employee"—"any individual employed by an employer," 29 U.S.C. § 203(e)(1)—is unhelpful. *Harker*, 990 F.2d at 133; *see also Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994). The Act further defines "employer" as "any person acting . . . in the

---

[1] The parties agree that the NMMWA should be interpreted in accordance with the FLSA and that the appellants' unjust enrichment claim depends on the success of their FLSA claim. Thus, our discussion is limited to interpreting the FLSA.

6

interest of an employer in relation to an employee," *id.* § 203(d), and "employ" as "to suffer or permit to work," *id.* § 203(g). It then exempts a host of positions, including "criminal investigator" and "casual" babysitter, from the Act's minimum wage and hour requirements. *Id.* § 213(a).

Appellants claim that because civil immigration detainees are not expressly exempted from the FLSA's coverage, they must be subject to its minimum wage provisions. But this argument puts the cart before the horse. An individual must first be an "employee" for purposes of the FLSA before his or her position may be exempted from the Act's provisions. *Harker*, 990 F.2d at 133 (noting that this argument "presupposes that inmates in SUI-type programs should be considered employees for FLSA purposes in the first place"); *Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005) ("The reason the FLSA contains no express exception for prisoners is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress."). Thus the sole question here is whether appellants are "employees." Finding the Act's definitions only so useful in advancing their analyses, courts have instead turned to the FLSA's legislative purpose for guidance. *See, e.g.*, *Bennett*, 395 F.3d at 409.

The FLSA was enacted to protect workers who operate within "the traditional employment paradigm." *Harker*, 990 F.2d at 133. Persons in custodial detention—such as appellants—are not in an employer-employee relationship but in a detainer-detainee relationship that falls outside that paradigm. There are many crucial differences between these two relationships. In the latter relationship, individuals are under the control and supervision of the detention facility, which is simply not comparable to the "free labor

7

situation of true employment." *Id.* Those in custodial detention, unlike workers in a free labor market, "certainly are not free to walk off the job site and look for other work." *Id.*; *see also id.* ("When a shift ends, inmates do not leave DOC supervision, but rather proceed to the next part of their regimented day."); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991). Put simply, "there is *too much* control to classify the [detainer-detainee] relationship as one of employment." *Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992).

It is for that reason that the mere voluntariness of participating in a work program or the transfer of money between a detainee and detainer does not manufacture a bargained-for exchange of labor. There is an "exchange" in the normal sense of the word when money moves from CoreCivic's pockets to those of the detainees, but that exchange is not "bargained-for." Those in custodial detention "do not deal at arms' length." *Harker,* 990 F.2d at 133; *see also Alvarado Guevara*, 902 F.2d at 396. While a detainee may choose whether or not to participate in a voluntary work program, they have that opportunity "solely at the prerogative" of the custodian. *Harker*, 990 F.2d at 133; *see also Morgan v. MacDonald*, 41 F.3d 1291, 1293 (9th Cir. 1994) ("[The inmate] was in no sense free to bargain with would-be employers for the sale of his labor; his work at the prison was merely an incident of his incarceration."). Such is the case here with the detainees' participation in the VWP.

Moreover, unlike workers in a free labor market who use their wages to maintain their "standard of living" and "general well-being," 29 U.S.C. § 202(a), detainees in a custodial institution are entitled to the provision of food, shelter, medicine, and other

8

necessities. *See Harker*, 990 F.2d at 133; *Vanskike*, 974 F.2d at 810–11; *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992). Like the inmates in *Harker*, CoreCivic is both morally and legally bound to meet detainees' basic needs, further undermining appellants' claim that the FLSA is applicable. In an effort to blunt this point, appellants contest the adequacy of the food and other necessities that CoreCivic is contractually obligated to provide. But any potential inadequacy of conditions is not appropriately remedied by applying the FLSA wholesale to detainees. As the Seventh Circuit noted, it "is the jail's constitutional obligation to provide [a detainee] with his basic needs, including adequate food and drinkable water. When the jail fails to do so, it is that failure that must be remedied (the Constitution demands it); it does not entitle him to receive minimum wage under the FLSA." *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015). Such a conclusion makes good sense. Hinging the FLSA's application on the adequacy of mandated conditions would lead to prolonged litigative uncertainty and leave everyone in limbo.

B.

Appellants attempt to characterize *Harker* as simply a case about criminal detention. But our more recent decision in *Matherly v. Andrews* reaffirmed the principles of *Harker* and foreclosed this contention. 859 F.3d 264 (4th Cir. 2017). In *Matherly*, this court rejected the civilly detained plaintiff's request for the federal minimum wage. The claim ran "head first into our FLSA jurisprudence" because: (1) the purpose of the program was not to turn a profit; (2) Matherly's "employment relationship with the BOP [wasn't] the product of a bargained-for exchange"; and (3) the prison provided detainees with food, shelter, and clothing, "satisfying the underlying purpose of the FLSA's minimum wage

9

provision." *Id.* at 278 (citing *Harker*, 990 F.2d at 133). Thus, the civil nature of appellants' detainment is not dispositive.

Our circuit is hardly alone in refusing to expand the Act to custodial detentions. Each circuit to address the issue—whether the litigants sought FLSA application for inmates, or pretrial detainees, or civil detainees—has concluded that the FLSA's protections do not extend to the custodial context generally. *See, e.g.*, *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) (inmate labor); *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir. 2005) (same); *Gambetta v. Prison Rehab. Indus. & Diversified Enters., Inc.*, 112 F.3d 1119, 1124 (11th Cir. 1997) (same); *Danneskjold v. Hausrath*, 82 F.3d 37, 43–44 (2d Cir. 1996) (same); *Abdullah v. Myers*, 52 F.3d 324, at *1 (6th Cir. 1995) (same); *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994) (same); *Henthorn v. Dep't of Navy*, 29 F.3d 682, 686–87 (D.C. Cir. 1994) (same); *Franks v. Okla. State Indus.*, 7 F.3d 971, 973 (10th Cir. 1993) (same); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1325 (9th Cir. 1991) (same); *see also Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015) (pre-trial detainee labor); *Tourscher v. McCullough*, 184 F.3d 236, 243–44 (3d Cir. 1999) (same); *Villarreal v. Woodham*, 113 F.3d 202, 206–07 (11th Cir. 1997) (same); *see also Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008) (civil detainee labor); *Miller v. Dukakis*, 961 F.2d 7, 9 (1st Cir. 1992) (same); *Williams v. Coleman*, 536 F. App'x 694 (9th Cir. 2013) (same).

Such a weight of authority is not easily dismissed. Failing in their distinction between criminal and civil detainment, appellants highlight that they are being detained for *immigration* purposes, noting that "[c]ivil immigration detention is not punitive or corrective." J.A. 10. But the fact that appellants are being held specifically for immigration

10

purposes does not alter our analysis. Neither *Harker* nor *Matherly* turned on the reason for the custodial detention but rather the fact of it. Appellants are detained pending administrative immigration proceedings and cannot leave the facility without authorization from ICE. As explained above, the custodial detention context is inconsistent with the free labor market envisioned by the FLSA, and the amassed authority of our sister circuits demonstrates that logic applies to institutional confinements generally. *See, e.g.*, *Miller*, 961 F.2d at 9 (civil detainee); *Villarreal*, 113 F.3d at 206 (pretrial detainee).

Indeed, to find that detention for immigration purposes could render a detainee an "employee" for purposes of the FLSA would create a split with the Fifth Circuit, which has addressed this issue head-on. *See Alvarado Guevara v. I.N.S.*, 902 F.2d 394 (5th Cir. 1990) (per curiam). Considering the Act's purpose, the Fifth Circuit found that "current and former alien detainees of the INS whom Defendants employed in grounds maintenance, cooking, laundry and other services at the rate of one dollar ($1.00) per day" were not "employees" for purposes of the FLSA. *Id.* at 395–96. Thus, to hold with appellants would require us to not only contravene our own precedent but would also create a conflict in a context where uniformity is favored.

Appellants argue finally that the FLSA's aim of combatting unfair competition in the marketplace is implicated because the detention facility happens to be operated by a for-profit, private entity. *See* 29 U.S.C. § 202(a). But whatever merit this observation possesses as a matter of policy cannot dictate its adoption as a proposition of law. Other circuits have held that the nonemployee-status of detainees is not altered by the private, for-profit nature of the detention facility. *See, e.g.*, *Bennett*, 395 F.3d at 409 ("The Fair

11

Labor Standards Act is intended for the protection of employees, and prisoners are not employees of their prison, whether it is a public or a private one."). While detentions may well have an incidental monetary aspect, their aims are not primarily economic ones. "The purpose of [appellants'] detention is to ensure their presence during the administrative process and, if necessary, to ensure their availability for removal from the United States." J.A. 10 (Appellants' Class Action Complaint). The fact that CoreCivic would have to hire nondetainees for such work without detainees' participation does not eliminate the non-pecuniary goals of the VWP. As with the work programs in *Harker* and *Matherly*, the VWP's aim of reducing the "negative impact of confinement . . . through decreased idleness, improved morale and fewer disciplinary incidents" remains intact. J.A. 155 (Voluntary Work Program pamphlet); *see also Abdullah*, 52 F.3d at *1 ("The fact that the prison in which Abdullah is incarcerated is managed by a private contractor does not render the interest served by providing work for the inmates into a pecuniary rather than a rehabilitative one. Under either scenario [whether the institution is public or private], services not performed by prisoners would have to be obtained at a greater expense.").

    Our point is emphatically not one of advocacy for any method of detention or custody. It is simply not within this court's authority to amend statutes from the bench. The FLSA was a congressional creation, and its expansion is a matter for Congress as well. What appellants propose is a fundamental alteration of what it means to be an "employee." Appellants are not employees in the free labor market contemplation of the Act, and we are powerless to make them so. If Congress wishes to apply the FLSA to custodial detentions, it is certainly free to do so. But the corollary is that courts are not.

## III.

For the foregoing reasons, we affirm the judgment.

*AFFIRMED*